IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:22-CV-78-D

ARCH SPECIALTY INSURANCE )
COMPANY, )
 )
           Plaintiff, )
 )
v. ) **ORDER**
 )
FERSTER ELECTRIC, LLC, et al., )
 )
           Defendants. )

On May 19, 2022, Arch Specialty Insurance Company ("Arch" or "plaintiff") filed a complaint seeking a declaratory judgment concerning insurance coverage against Ferster Electric, LLC ("Ferster Electric"); Matthew Ferster; Robert Ferster; Justin Spivey ("Spivey"); Travis Reed Suggs; Pamela Suggs; Kelli S. Barnes and Christopher C. Smith, the administrators of the Estate of Garrett Smith ("the Smith Estate"); Jan Britt Lynn, the administrator of the Estate of Megan Allison Lynn ("the Lynn Estate"); and Madisyn Elizabeth Reynolds, the administrator of the Estate of Jennifer Elizabeth Hayes ("the Hayes Estate") [D.E. 2]. On November 29, 2022, the clerk of court entered default against Travis Reed Suggs, Pamela Suggs, Ferster Electric, and Robert Ferster [D.E. 66–69]. On December 29, 2022, the clerk of court entered default against Matthew Ferster [D.E. 72]. On February 17, 2023, the clerk of court entered default against Spivey [D.E. 82].

On July 22, 2022, the Smith Estate answered the complaint and asserted counterclaims [D.E. 33]. On July 25, 2022, the Hayes Estate answered the complaint and asserted counterclaims [D.E. 35]. On July 29, 2022, the Lynn Estate answered the complaint and asserted counterclaims [D.E. 38]. On January 19, 2023, Arch answered the Smith Estate's counterclaims [D.E. 76], the

Hayes Estate's counterclaims [D.E. 77], and the Lynn Estate's counterclaims [D.E. 78]. On June 30, 2023, the defendants jointly moved for judgment on the pleadings [D.E. 88] and filed a memorandum in support [D.E. 89]. On August 11, 2023, Arch responded in opposition [D.E. 91]. On August 25, 2023, the defendants jointly replied [D.E. 92].

On November 29, 2023, the parties filed a joint motion to stay this action pending mediation [D.E. 93]. On December 1, 2023, the court granted the motion to stay [D.E. 95]. On April 4, 2024, the parties convened for mediation. See [D.E. 96] 1. On April 11, 2024, Arch notified the court that the parties reached an impasse and requested 14 days to submit a proposed amended scheduling order. See [D.E. 100] 1. As explained below, the court denies defendants' motion for judgment on the pleadings.

I.

Arch is an insurance company organized under the laws of Missouri with its principal place of business in New Jersey. See Compl. [D.E. 2] ¶ 1; Answer ("Smith Est. Ans.") [D.E. 33] ¶ 1; Answer ("Hayes Est. Ans.") [D.E. 35] ¶ 1; Answer ("Lynn Est. Ans.") [D.E. 38] ¶ 1. Arch is an authorized surplus lines insurer in North Carolina. See Compl. ¶ 1; Smith Est. Ans. ¶ 1; Hayes Est. Ans. ¶ 1; Lynn Est. Ans. ¶ 1. Arch issued a commercial general liability insurance policy to Ferster Electric effective from September 25, 2019, to September 25, 2020 ("the Policy"). See Compl. ¶ 2; Smith Est. Ans. ¶ 2; Hayes Est. Ans. ¶ 2; Lynn Est. Ans. ¶ 2. Ferster Electric is a limited liability company organized under the laws of North Carolina with its principal place of business in Shallotte, North Carolina. See Compl. ¶ 3; Smith Est. Ans. ¶ 3; Hayes Est. Ans. ¶ 3; Lynn Est. Ans. ¶ 3. Generally, Ferster Electric performs electrical work. See Compl. ¶ 3; Smith Est. Ans. ¶ 3; Hayes Est. Ans. ¶ 3; Lynn Est. Ans. ¶ 3. Matthew and Robert Ferster are citizens and residents of North Carolina and managing members of Ferster Electric. See Compl. ¶¶ 4–5;

Smith Est. Ans. ¶¶ 4–5; Hayes Est. Ans. ¶¶ 4–5; Lynn Est. Ans. ¶¶ 4–5. The remaining defendants in this action are also citizens and residents of North Carolina. See Compl. ¶¶ 6–11; Smith Est. Ans. ¶¶ 6–11; Hayes Est. Ans. ¶¶ 6–11; Lynn Est. Ans. ¶¶ 6–11.

On March 29, 2020, Matthew Ferster was driving his personal 18' boat on Waccamaw River near Pireway, North Carolina, when he collided with Travis Suggs's boat. See Compl. ¶ 14; Smith Est. Ans. ¶ 14; Hayes Est. Ans. ¶ 14; Lynn Est. Ans. ¶ 14. Garrett Smith, Jennifer Elizabeth Hayes, and Megan Allison Lynn were riding in Travis Suggs's boat, and they died in the crash. See Compl. ¶¶ 17–18; Smith Est. Ans. ¶¶ 17–18; Hayes Est. Ans. ¶¶ 17–18; Lynn Est. Ans. ¶¶ 17–18.

On July 30, 2021, the Smith Estate filed a lawsuit against Matthew Ferster, Spivey, Travis Suggs, and Pamela Suggs in the Eastern District of North Carolina ("the Smith lawsuit") seeking damages for the death of Garrett Smith. See Smith Est. Ans. ¶¶ 22, 24; Hayes Est. Ans. ¶¶ 22, 24; Lynn Est. Ans. ¶¶ 22, 24; [D.E. 2-1]. But see Compl. ¶¶ 22, 24 (stating incorrectly July 20, 2021). On March 18, 2022, the Smith Estate filed a separate lawsuit against Ferster Electric in the Eastern District of North Carolina ("the second Smith lawsuit"). See Compl. ¶ 27; Smith Est. Ans. ¶ 27; Hayes Est. Ans. ¶ 27; Lynn Est. Ans. ¶ 27; [D.E. 2-2]. On March 21, 2022, the Lynn Estate filed a lawsuit against Ferster Electric in the Eastern District of North Carolina ("the Lynn lawsuit"). See Compl. ¶ 28; Smith Est. Ans. ¶ 28; Hayes Est. Ans. ¶ 28; Lynn Est. Ans. ¶ 28; [D.E. 2-3]. On March 24, 2022, the Hayes Estate filed a lawsuit against Matthew Ferster, Spivey, Travis and Pamela Suggs, and Ferster Electric in the Eastern District of North Carolina ("the Hayes lawsuit"). See Compl. ¶ 29; Smith Est. Ans. ¶ 29; Hayes Est. Ans. ¶ 29; Lynn Est. Ans. ¶ 29; [D.E. 2-4].

In the second Smith lawsuit, the Lynn lawsuit, and the Hayes lawsuit, the plaintiffs allege that Ferster Electric funded and supported Matthew Ferster's boat and that Matthew Ferster used

3

the boat for Ferster Electric business. See Compl. ¶ 30; Smith Est. Ans. ¶ 30; Hayes Est. Ans. ¶ 30; Lynn Est. Ans. ¶ 30. The plaintiffs in those lawsuits allege negligence claims and seek damages from Ferster Electric to cover funeral expenses, pain and suffering, and loss of income, services, and society. See Compl. ¶¶ 31, 33; Smith Est. Ans. ¶¶ 31, 33; Hayes Est. Ans. ¶¶ 31, 33; Lynn Est. Ans. ¶¶ 31, 33.

Matthew Ferster sought defense and indemnity under the Policy for the Smith lawsuit, but Arch declined. See Compl. ¶¶ 39–40; Smith Est. Ans. ¶¶ 39–40; Hayes Est. Ans. ¶¶ 39–40; Lynn Est. Ans. ¶¶ 39–40. Robert Ferster sought defense for depositions in the Smith lawsuit under the Policy, but Arch also declined this request. See Compl. ¶¶ 41–42; Smith Est. Ans. ¶¶ 41–42; Hayes Est. Ans. ¶¶ 41–42; Lynn Est. Ans. ¶¶ 41–42. Arch brought this action seeking a declaration that it has no duty under the Policy to defend or indemnify Ferster Electric, Matthew Ferster, or Robert Ferster in the Smith lawsuit, the second Smith lawsuit, the Lynn lawsuit, and the Hayes lawsuit (collectively, "the underlying lawsuits"). See Compl. ¶ 43; Smith Est. Ans. ¶ 43; Hayes Est. Ans. ¶ 43; Lynn Est. Ans. ¶ 43.

The Smith Estate, Hayes Estate, and Lynn Estate allege that Arch has violated its duty to defend under the Policy. See Smith Est. Ans. 6–7; Hayes Est. Ans. 6–7; Lynn Est. Ans. 6–7. Each defendant also asserts a counterclaim for a declaratory judgment that Arch is liable "within the Policy limits for the full amount of any judgment rendered" in favor of the Estates in the underlying lawsuits. See Smith Est. Ans. 7–14; Hayes Est. Ans. 7–14; Lynn Est. Ans. 7–12.

II.

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings should be granted if "the moving party has clearly established that no material issue of fact remains

4

to be resolved and the party is entitled to judgment as a matter of law." Park Univ. Enters. v. Am. Cas. Co. of Reading, 442 F.3d 1239, 1244 (10th Cir. 2006) (quotation omitted), abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co., 545 F. App'x 750 (10th Cir. 2013) (unpublished); see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012); Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002).

The same standard applies to a motion for judgment on the pleadings as to a motion to dismiss for failure to state a claim. See Burbach Broad. Co., 278 F.3d at 405–06. When a court evaluates a motion for judgment on the pleadings, it must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 347, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155, 135 (2015); Burbach Broad. Co., 278 F.3d at 406. A court must determine whether a pleading is legally and factually sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–70 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). A pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. Moreover, a court need not accept a pleading's legal conclusions drawn from the facts. See Iqbal, 556 U.S. at 678–79; Giarratano, 521 F.3d at 302. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted).

In evaluating a motion for judgment on the pleadings, the court may consider the pleadings and any materials referenced in or attached to the pleadings, which are incorporated by reference.

5

See Fed. R. Civ. P. 10(c); Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). A court also may consider "matters of which a court may take judicial notice," such as public records. Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007). In addition, a court may consider documents attached to a motion for judgment on the pleadings so long as those documents are "integral to the complaint" and authentic. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018).

Unlike under Rule 12(b)(6), Rule 12(c) permits a court to consider defendant's answer. The defendant, however, "cannot rely on allegations of fact contained only in the answer, including affirmative defenses, which contradict the complaint because [p]laintiff was not required to reply to defendants' answer, and all allegations in the answer are deemed denied." Mendenhall v. Hanesbrands, Inc., 856 F. Supp. 2d 717, 724 (M.D.N.C. 2012) (alterations and quotations omitted); see Fed. R. Civ. P. 8(b)(6).

North Carolina law applies to the court's interpretation of the North Carolina insurance contract at issue in this case. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted). In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless

6

there is persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted); see Hicks ex rel. Feiock v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

The coverage contracted for in an insurance policy determines the insurer's duty to defend its insured. See Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 303–07, 524 S.E.2d 558, 564–68 (2000); Mastrom, Inc. v. Cont'l Cas. Co., 78 N.C. App. 483, 484, 337 S.E.2d 162, 163 (1985); see also Owners Ins. Co. v. MM Shivah LLC, No. 5:20-CV-21, 2022 WL 668382, at *2–4 (E.D.N.C. Mar. 4, 2022) (unpublished); Peerless Ins. Co. v. Strother, 765 F. Supp. 866, 869 (E.D.N.C. 1990). North Carolina law employs the "comparison test," comparing the insurance policy with the allegations in the complaint. See Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 364 N.C. 1, 6–7, 692 S.E.2d 605, 610–11 (2010); see, e.g., Owners Ins. Co., 2022 WL 668382, at *2; Peerless Ins. Co., 765 F. Supp. at 869. "If the facts, as alleged in the complaint, could support liability under the policy, then a duty to defend arises on the insurer's part." Peerless Ins. Co., 765 F. Supp. at 869. In determining whether a duty to defend exists, a court focuses on the facts alleged in the underlying action and not on how the parties characterize the claims. See Holz-Her U.S., Inc. v. U.S. Fid. & Guar. Co., 141 N.C. App. 127, 128, 539 S.E.2d 348, 350 (2000); see also State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am., 343 F.3d 249, 255 (4th Cir. 2003); Kenney Props., Inc. v. Phila. Indem. Ins. Co., 665 F. Supp. 3d 752,

7

761 (E.D.N.C. 2022), aff'd, No. 22-1842, 2023 WL 8230508 (4th Cir. Nov. 28, 2023) (per curiam) (unpublished).

"An insurer's duty to defend arises when the claim against the insured sets forth facts representing a risk covered by the terms of the policy. The duty to defend is much broader than the duty to indemnify, and may attach even in an action in which no damages are ultimately awarded." Fieldcrest Cannon, Inc. v. Fireman's Fund Ins. Co., 124 N.C. App. 232, 242, 477 S.E.2d 59, 66 (1996) (citations omitted), modified on other grounds on reh'g, 127 N.C. App. 729, 493 S.E.2d 658 (1997) (per curiam); see Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 691 & n.2, 340 S.E.2d 374, 377 & n.2 (1986); see also Peerless Ins. Co., 765 F. Supp. at 869. "[E]ven a meritorious allegation cannot obligate an insurer to defend if the alleged injury is not within, or is excluded from, the coverage provided by the insurance policy." Harleysville Mut. Ins. Co., 364 N.C. at 7, 692 S.E.2d at 611; see Hartford Cas. Ins. Co. v. Greve, No. 3:17CV183, 2017 WL 5557669, at *3 (W.D.N.C. Nov. 17, 2017) (unpublished), aff'd sub nom. Hartford Cas. Ins. Co. v. Ted A. Greve & Assocs., PA, 742 F. App'x 738 (4th Cir. 2018) (per curiam) (unpublished). "Of course, allegations of facts that describe a hybrid of covered and excluded events or pleadings that disclose a mere possibility that the insured is liable (and that the potential liability is covered) suffice to impose a duty to defend upon the insure[r]." Waste Mgmt. of Carolinas, Inc., 315 N.C. at 691 n.2, 340 S.E.2d at 377 n.2. The insurer has a duty to defend unless the facts as alleged "are not even arguably covered by the policy." Id. at 692, 340 S.E.2d at 378; see Kenney Props., Inc., 665 F. Supp. 3d at 761.

Where the relevant facts are undisputed, construing the policy is an issue of law. See Parker v. State Cap. Life Ins. Co., 259 N.C. 115, 117, 130 S.E.2d 36, 38 (1963). "The interpretation of language used in an insurance policy is a question of law, governed by well-established rules of

8

construction." Trophy Tracks, Inc. v. Mass. Bay Ins. Co., 195 N.C. App. 734, 739, 673 S.E.2d 787, 790 (2009) (quotation omitted); see Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970); N.C. Farm Bureau Mut. Ins. Co. v. Mizell, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95 (2000). When interpreting "an insurance policy, the court may take into consideration the character of the business of the insured and the usual hazards involved therein in ascertaining the intent of the parties." Fulford v. Jenkins, 195 N.C. App. 402, 409, 672 S.E.2d 759, 763 (2009) (quotation omitted); see McDowell Motor Co. v. N.Y. Underwriters Ins. Co., 233 N.C. 251, 254, 63 S.E.2d 538, 540–41 (1951). A court must construe an insurance contract as a reasonable person in the position of the insured would have understood the insurance contract. See Register v. White, 358 N.C. 691, 695, 599 S.E.2d 549, 553 (2004); Marriott Fin. Servs., Inc. v. Capitol Funds, Inc., 288 N.C. 122, 143, 217 S.E.2d 551, 565 (1975); Trophy Tracks, Inc., 195 N.C. App. at 738, 673 S.E.2d at 790.

The insurance company selected the words in the insurance policy, and a court must resolve "any ambiguity or uncertainty as to their meaning . . . in favor of the policyholder, or the beneficiary, and against the company." Wachovia Bank & Tr. Co., 276 N.C. at 354, 172 S.E.2d at 522; see Williams v. Nationwide Mut. Ins. Co., 269 N.C. 235, 238, 152 S.E.2d 102, 105 (1967); Mills v. State Life & Health Ins. Co., 261 N.C. 546, 553, 135 S.E.2d 586, 590 (1964); Jones v. Pa. Cas. Co., 140 N.C. 262, 264, 52 S.E. 578, 579 (1905).

Where a policy defines a term, that definition controls. See Gaston Cnty. Dyeing Mach. Co., 351 N.C. at 299, 524 S.E.2d at 563; Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978). Where a policy does not define a term, a court gives "nontechnical words . . . their meaning in ordinary speech, unless the context clearly indicates another meaning was intended." Woods, 295 N.C. at 506, 246 S.E.2d at 777; see Gaston Cnty. Dyeing Mach. Co.,

9

351 N.C. at 299, 524 S.E.2d at 563; Brown v. Lumbermens Mut. Cas. Co., 326 N.C. 387, 392, 390 S.E.2d 150, 153 (1990); Grant v. Emmco Ins. Co., 295 N.C. 39, 42, 243 S.E.2d 894, 897 (1978). Moreover, courts give a term in an insurance policy the same meaning throughout the various coverages unless the policy clearly expresses an intent to give different meanings to the term within the different coverages in the same policy. See Grant, 295 N.C. at 54, 243 S.E.2d at 904; Fieldcrest Cannon, Inc., 124 N.C. App. at 244, 477 S.E.2d at 67.

The insured bears the burden to prove coverage. See Nationwide Mut. Ins. Co. v. McAbee, 268 N.C. 326, 328, 150 S.E.2d 496, 497 (1966); N.C. Farm Bureau Mut. Ins. Co. v. Sadler, 365 N.C. 178, 182, 711 S.E.2d 114, 116–17 (2011); Metric Constructors, Inc. v. Indus. Risk Insurers, 102 N.C. App. 59, 61–62, 401 S.E.2d 126, 128, aff'd, 330 N.C. 439, 410 S.E.2d 392 (1991) (per curiam). "If the insurer relies on a clause of the policy which excludes coverage, the burden is on the insurer to establish the exclusion." McAbee, 268 N.C. at 328, 150 S.E.2d at 497.

Exclusions are not favored, and courts strictly construe exclusions against the insurer within the reasonable interpretation of the policy language. See Allstate Ins. Co. v. Shelby Mut. Ins. Co., 269 N.C. 341, 347, 152 S.E.2d 436, 441 (1967); Eatman Leasing, Inc. v. Empire Fire & Marine Ins. Co., 145 N.C. App. 278, 281, 550 S.E.2d 271, 273 (2001). "[E]xclusions from coverage are construed strictly so as to provide coverage which would otherwise be afforded by the policy." Marriott Fin. Servs., Inc., 288 N.C. at 144, 217 S.E.2d at 565; see Wachovia Bank & Tr. Co., 276 N.C. at 355, 172 S.E.2d at 522–23.

Arch contends that the boat crash was not an "occurrence" under the Policy because Matthew Ferster was operating his boat while impaired. Compl. ¶ 45. According to Arch, he "should have reasonably expected the collision to occur." Id.

10

Under the Policy, Arch agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," only if the "'bodily injury' or 'property damage' is caused by an 'occurrence.'" [D.E. 2-5] 43. "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 56. The Policy does not define "accident" or exclude coverage for occurrences where the insured is intoxicated.[1]

"An accident is generally considered to be an unplanned and unforeseen happening or event, usually with unfortunate consequences." Gaston Cnty. Dyeing Mach. Co., 351 N.C. at 302, 524 S.E.2d at 564; see Tayloe v. Indem. Co., 257 N.C. 626, 627, 127 S.E.2d 238, 239–40 (1962); Erie Ins. Exch. v. Builders Mut. Ins. Co., 227 N.C. App. 238, 245, 742 S.E.2d 803, 810 (2013). "Whether events are accidental and constitute an occurrence depends upon whether they were 'unexpected and unintended' from the point of view of the insured." Erie Ins. Exch., 227 N.C. App. at 245–46, 742 S.E.2d at 810 (citation omitted); see Waste Mgmt. of Carolinas, Inc., 315 N.C. at 694, 340 S.E.2d at 379; N.C. Farm Bureau Mut. Ins. Co. v. Cox, 263 N.C. App. 424, 444, 823 S.E.2d 613, 627 (2019); Holz-Her U.S., Inc., 141 N.C. App. at 129, 539 S.E.2d at 350. Generally, where an insurance policy does not explicitly exclude injuries arising out of intoxication, accident insurance policies cover crashes in which the insured was intoxicated because "death arising out of driving while intoxicated is not such that the insured should have reasonably known that his or her actions would probably result in his or her death." 10 Couch on

---

[1] The Policy excludes coverage in some circumstances where a person is intoxicated, but only if the insured is "in the business of manufacturing, distributing, selling, serving[,] or furnishing alcoholic beverages." Id. at 44. This exclusion does not apply to Ferster Electric. See id. at 5, 34.

11

Ins. § 142:46 (3d ed. 1995); see Mozingo v. Mid-S. Ins. Co., 29 N.C. App. 352, 353–55, 224 S.E.2d 208, 209–10 (1976); see also Builders Mut. Ins. Co. v. N. Main Const., Ltd., 361 N.C. 85, 87–89, 637 S.E.2d 528, 530–31 (2006) (analyzing whether a coverage exclusion applied where the underlying lawsuit arose out of a drunk driving collision, rather than analyzing if the collision was an "accident").

In the underlying lawsuits, the plaintiffs allege that the boat crash resulted from Matthew Ferster driving his boat while intoxicated. See [D.E. 2-1] ¶¶ 21(b); [D.E. 2-2] ¶¶ 23–25; [D.E. 2-3] ¶¶ 24–26; [D.E. 2-4] ¶ 35(b). Thus, the crash was an "occurrence" under the Policy. See Waste Mgmt. of Carolinas, Inc., 315 N.C. at 692, 340 S.E.2d at 378; Mozingo, 29 N.C. App. at 353–55, 224 S.E.2d at 209–10. Accordingly, the boat crash was an accident that triggered coverage under the Policy.

Arch contends that if the boat crash triggered coverage under the Policy, the Policy excludes coverage because Matthew Ferster "intentionally drove his boat while impaired, and the collision was an expected or intended result of such impaired driving." Compl. ¶ 48. Under the Policy, Arch does not cover "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." [D.E. 2-5] 44. In general liability insurance policies, "the 'expected or intended' exclusion fold[s] into the definition of 'occurrence' such that, if the alleged facts constituted an 'occurrence[,]' . . . those alleged facts would necessarily also allege an 'injury' that was neither 'expected' nor 'intended' by the insured." N.C. Farm Bureau Mut. Ins. Co., 263 N.C. App. at 446, 823 S.E.2d at 628; see Davis v. Dibartolo, 176 N.C. App. 142, 146–48, 625 S.E.2d 877, 881–82 (2006); McCoy v. Coker, 174 N.C. App. 311, 316–17, 620 S.E.2d 691, 694–95 (2005). Thus, because the boat crash was an "occurrence" under the Policy, the Policy does not exclude coverage under the "expected or intended" exclusion.

12

Next, Arch argues that if the Policy coverage is triggered, the Policy excludes coverage of the crash because "the alleged injuries and damages arise out of the ownership, maintenance, entrustment, or use of a watercraft." Compl. ¶ 51; see [D.E. 91] 13–15. The defendants respond that the watercraft exclusion does not apply to the crash. See [D.E. 89] 14–15.

The Policy includes Matthew Ferster, a managing member of Ferster Electric, as an "insured," but only "with respect to the conduct of [Ferster Electric's] business" and Matthew Ferster's "duties as [a] manager[]." [D.E. 2-5] 51. The Policy excludes coverage for "'[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use[,] or entrustment to others of any . . . watercraft owned or operated by or rented or loaned to any insured." Id. at 46. The watercraft exclusion does not apply to any watercraft that is (1) not owned by the insured, (2) less than 26 feet long, and (3) not being used to carry persons or property for a charge. See id.

Arch must demonstrate that the watercraft exclusion applies. See McAbee, 268 N.C. at 328, 150 S.E.2d at 497; Duncan v. Cuna Mut. Ins. Soc'y, 171 N.C. App. 403, 405–06, 614 S.E.2d 592, 594 (2005). The court construes the exclusion strictly. See Marriott Fin. Servs., Inc., 288 N.C. at 144, 217 S.E.2d at 565; Wachovia Bank & Tr. Co., 276 N.C. at 355, 172 S.E.2d at 522–23; Allstate Ins. Co., 269 N.C. at 347, 152 S.E.2d at 441.

Arch alleges that Matthew Ferster owned the boat. See Compl. ¶ 14. Arch also alleges Ferster Electric did not own the boat, and Matthew Ferster was not using his boat to perform electrical work for Ferster Electric at the time of the crash. See id. at ¶¶ 14, 20. Thus, Arch plausibly alleges that the owner of the boat was not an "insured" at the time of the crash. Cf. [D.E. 2-5] 51. Arch also plausibly alleges that Matthew Ferster's boat was 18 feet long. See Compl. ¶ 14. Moreover, Arch plausibly alleges that Matthew Ferster was using his boat "on a social outing"

13

at the time of the crash, not carrying persons or property for a charge. Id. at ¶ 20. Accordingly, Arch fails to plausibly allege that the watercraft exclusion applies. See [D.E. 2-5] 46.

Next, Arch argues that the boat crash falls outside the scope of the coverage under the Policy because the Policy contains a classification limitation endorsement. See Compl. ¶¶ 54–55; [D.E. 91] 8–10. Under the Policy, Arch agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." [D.E. 2-5] 43. The Policy's classification limitation endorsement limits the Policy's coverage to "only . . . operations that are classified or shown on form 06 AGL0129 00 02 13." Id. at 34. That form lists "[e]lectrical [w]ork - within buildings" as Ferster Electric's only operation. Id. at 5.

"Commercial general liability policies are designed to protect the insured against losses to third parties arising out of the operation of the insured's business." 9A Couch on Ins. § 129:2 (3d ed. 1995). "Consequently, a loss must arise out of the insured's business operations in order to be covered under the policy issued to the insured." Id. A classification limitation endorsement restricts coverage available under a commercial general liability policy to the operations or insureds listed in the endorsement and excludes coverage for those operations or insureds not listed in the endorsement. See, e.g., Travelers Indem. Co. v. Am. Alt. Ins. Co., No. 1:22CV404, 2024 WL 1093758, at *4–8 (M.D.N.C. Mar. 13, 2024) (unpublished); Am. S. Ins. Co. v. Reynolds Custom Tiling, LLC, No. 2:15-CV-4190, 2016 WL 10586431, at *2 (D.S.C. Sept. 28, 2016) (unpublished), amended on reconsideration, 2016 WL 10586424 (D.S.C. Nov. 10, 2016) (unpublished); Canopius U.S. Ins., Inc. v. Cresco, Inc., No. 1:14CV172, 2014 WL 5107063, at *6–7 (E.D. Va. Oct. 6, 2014) (unpublished); Am. Econ. Ins. Co. v. Penn-Am. Ins. Co., No. 7:07-CV-

14

174, 2009 WL 10688140, at *3 (E.D.N.C. June 22, 2009) (unpublished); Am. S. Ins. Co. v. Ehmer, No. 7:06-CV-144, 2009 WL 256374, at *4 (E.D.N.C. Feb. 3, 2009) (unpublished).

Arch alleges that Matthew Ferster "was not involved in or using his boat to perform operations associated with electrical work for Ferster Electric at the time of the collision" and was instead using "his personal boat on a social outing that day." Compl. ¶ 20. The plaintiffs in the underlying lawsuits fail to plausibly allege a connection between the boat crash and Matthew Ferster or Ferster Electric's performance of electrical work within buildings. Thus, a reasonable person in Ferster Electric's position would not expect its general commercial liability insurance policy, which specifically covers electrical work within buildings, to cover a managing member's intoxicated boat crash. See Register, 358 N.C. at 695, 599 S.E.2d at 553; Marriott Fin. Servs., Inc., 288 N.C. at 143, 217 S.E.2d at 565; Trophy Tracks, Inc., 195 N.C. App. at 738, 673 S.E.2d at 790. Accordingly, the court denies defendants' motion for judgment on the pleadings. See, e.g., Canopius U.S. Ins., Inc., 2014 WL 5107063, at *6–7; Evanston Ins. Co. v. Heeder, No. 8:11-CV-776, 2011 WL 4715177, at *3 (M.D. Fla. Oct. 7, 2011) (unpublished); Am. Econ. Ins. Co., 2009 WL 10688140, at *3; Northfield Ins. Co. v. Midtown Restorations LLC, 149 A.D.3d 417, 417, 50 N.Y.S.3d 369, 370 (N.Y. App. Div. 2017).

The defendants each assert a counterclaim for a declaration that Arch is not entitled to relief, that the Policy covers the damages described in the underlying lawsuits, and that Arch must pay up to the Policy's limits for any judgments obtained by the plaintiffs in the underlying lawsuits. See Smith Est. Ans. 7–14; Hayes Est. Ans. 7–14; Lynn Est. Ans. 7–12. These counterclaims present the same issues the court resolves in this order. As the court has explained, defendants are not entitled to judgment on the pleadings.

15

III.

In sum, the court DENIES defendants' motion for judgment on the pleadings [D.E. 88]. The parties SHALL file a proposed amended scheduling order by May 3, 2024.

SO ORDERED. This 22 day of April, 2024.

JAMES C. DEVER III
United States District Judge